**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

LARRY KLAYMAN

                Plaintiff,

       v.                            Case Number: 9:22-cv-80642-AHS

JULIA PORTER et al,

                Defendants.

---

## <u>PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND MOTION TO STAY</u>

Dated:  July 15, 2022

Respectfully submitted,

*/s/ Larry Klayman*

Larry Klayman, Esq.
7050 W. Palmetto Park Road
Boca Raton, FL  33433
Tel.:  561-558-5536
Email:  leklayman@gmail.com

*Pro Se*

## <u>TABLE OF CONTENTS</u>

<u>INTRODUCTION AND STATEMENT OF FACTS</u> ...................................................2

    Defendants Are Nothing More Than Political Tools and Weapons Used To Destroy
Conservative Lawyers .......................................................................................................3

    Defendants' Continued Pattern and Practice of Illegal, Improper, and Unethical
Misconduct .......................................................................................................................6

<u>THE LAW</u> ................................................................................................................12

    The Rule Against Claim Splitting Does Not Apply ...........................................12

    *Forum Non Conveniens* Does Not Apply ...........................................................12

    *Res Judicata* Does Not Apply ...........................................................................14

    Defendants Do Not Enjoy Absolute Immunity in Florida..................................15

    *Younger* Abstention Does Not Apply ................................................................17

    Mr. Klayman Has Pled Valid Causes of Action ................................................19

<u>CONCLUSION</u> ........................................................................................................20

# TABLE OF AUTHORITIES

## *Cases*

*Cullen v. Fliegner*, 18 F.3d 96 (2d Cir. 1994) ...........................................................18

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) ...........................15

*Hensler v. District Four Grievance Committee*, 790 F.2d 390 (5th Cir.1986). ...........18

*In Matter of Kevin E. Clinesmith*, 21-BG-018 (D.C. App.). ........................................5

*JMM Corp. v. District of Columbia*, 363 U.S. App. D.C. 160 (2004) .........................18

*Joseph v. Pacesetter Personnell Serv.*, 2022 U.S. Dist. LEXIS 108102
(S.D. Fla. June 16, 2022) ..............................................................................................12

*Lewellen v. Raff*, 843 F.2d 1103 (8th Cir. 1988) ........................................................18

*Livingston v. Guice*, 1995 U.S. App. LEXIS 29238 (4th Cir. Oct. 18, 1995) .............16

*Moten v. Hatch*, 2011 U.S. Dist. LEXIS 97661 (D.D.C. Aug. 25, 2011) ....................16

*Pulliam v. Allen*, 466 U.S. 522 (1984) ...........................................................11, 16, 17

*Richardson v. District of Columbia*, 711 F. Supp. 2d 115 (D.D.C. 2010) ..................16

*Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69 (2013) .................................................18

*Wilder-Mann v. United States*, 1993 U.S. Dist. LEXIS 9166 (June 27, 1993) ............16

## *Statutes*

D.C. Bar Rule XI § 19(a) ..............................................................................................15

Fla. Const. § IV ............................................................................................................19

Fla. Const. § IX ............................................................................................................19

## *Secondary Sources*

*Absolute Judicial Immunity Makes Absolute No Sense: An Argument for an Exception to Judicial
Immunity*, 84 Temp. L. Rev. 1071 ...............................................................................17

*Note: Pulliam v. Allen: Harmonizing Judicial Accountability for Civil Rights Abuses with
Judicial Immunity* 34 Am. U. L. Rev. 523 ...................................................................17

**MEMORANDUM OF LAW**

Plaintiff, Larry Klayman. ("Mr. Klayman") hereby submits the following in opposition to Defendants Julia Porter ("Porter"), Hamilton Fox, III ("Fox") and Matthew Kaiser's ("Kaiser") (collectively "Defendants") Motion to Dismiss, or in the Alternative, Motion to Stay Pending Resolution of First-Filed Case in Florida. ECF No. 5. Defendants Porter and Fox are attorneys with the District of Columbia Office of Bar Disciplinary Counsel ("ODC") and Defendant Kaiser is the chairperson of the District of Columbia Board on Professional Responsibility ("Board").

As a threshold matter, as set forth in Mr. Klayman's Motion to Remand, ECF No. 10, this Court does not have proper jurisdiction over this case, since there is no federal question invoked, and this amount in controversy does not exceed $75,000. Furthermore, there is currently pending a request for bona fide Judicial Council investigation[1], which is on appeal, as set forth in Mr. Klayman's Notice of Conflict of Interest, ECF No. 9, so this Court has a conflict of interest and may not preside over this case. Thus, before Defendants' motion is considered, this case should be transferred to another jurist in another non- conflicted federal court – as several other judges in this court also subject to complaints before the Judicial Counsel over their likely conflict of interest concerning Roger Stone, who makes a living "selling" his influence based on his close relationship with Trump, Exhibit 1, and who Plaintiff has had to sue on several occasions - such that he can move for reconsideration of the Court's fatally flawed order denying his Motion to Remand and file related pleadings to rectify the current lack of subject matter jurisdiction. Moreover, if this case is not remanded *sua sponte by this Court*, Mr. Klayman will file a Petition

---

[1] Based on demonstrable circumstances, Mr. Klayman believes that this Court, along with other judges in this Court have sought recommendations from Roger Stone for their appointment to the federal bench by former President Donald Trump. This it is alleged has influenced their behavior toward Plaintiff.

for Writ of mandamus to the 11ᵗʰ Circuit and Supreme Court if necessary. Thus, this case should be stayed until all challenges are heard. What this Court did is unsupportable at law.

## I.      INTRODUCTION AND STATEMENT OF FACTS

The Defendants' motion is ironically, but completely unsurprisingly, a continuation of the exact illegal, unlawful, and unconstitutional conduct set forth in Mr. Klayman's Complaint in this matter—a smear tactic meant to damage and destroy his reputation, financially ruin him, and to have him expend considerable amounts of time defending himself and therefore silence his conservative/libertarian private and public interest advocacy, the right to which is guaranteed to Mr. Klayman and his clients under Section IV of the Florida Constitution ( "Section IV"). It is telling that the Defendants devote nearly half of their motion to rehashing Mr. Klayman's prior litigation history not only with the Defendants themselves—but incredibly, also with his ex-wife—all of which is completely irrelevant to the case at bar. It is therefore beyond certain that the sole purpose for the inclusion of these past cases is the attempt to smear, defame, and falsely paint Mr. Klayman as pathologically litigious, when in actuality it is the Defendants' continued pattern and practice of illegal and improper misconduct that has necessitated all of this litigation. Mr. Klayman does not relish having to devote his limited time and resources to file these cases. He is forced to do so by the Defendants, in order to protect his reputation and ability to make a living as a conservative/libertarian private and public interest litigator and advocate.

Defendants have gotten adept at driving a completely fabricated narrative about Mr. Klayman in order to deflect attention from their own illegal, improper, and unethical misconduct. Not only is this shown above regarding the discussion about Mr. Klayman's litigation history, it is also evident in their accusations that Mr. Klayman is forum and judge "shopping" by filing this case in Florida. It is a baffling argument. Where else should claims for solely injunctive

relief, brought pursuant to the Florida Constitution, by a Florida resident be reasonably brought? It is beyond painfully obvious that it is Defendants who are the ones forum and judge "shopping," because they are a protected species in D.C. court system, and they know that they will receive more than favorable treatment once they can get these cases transferred there.

A.     **Defendants Are Nothing More Than Political Tools and Weapons Used To Destroy Conservative Lawyers**

It is important for the Court to grasp why Mr. Klayman has been targeted in such a manner by the Defendants. Mr. Klayman is a prominent conservative/libertarian public interest and private practice litigator and advocate, who has brought suit against Obama, the Clintons, and others. On the other hand, the Defendants are ideologically and politically diametrically opposed and adverse, which in and of itself is fine since everyone should be able to have their own political and other beliefs, but the Defendants have taken it many steps further and become a weapon for the left to seek out and destroy those who they do not agree with, which has become the norm in the nation's capital which is often referred to as "the swamp," for good reason, where destroying ideological and political adversaries is seen as a normal way of life. Defendants have been particularly active during the Trump years and thereafter, and have accepted and initiated ethics complaints against White House Counsellor Kellyanne Conway[2] over remarks she made on cable news, against former Trump Attorney General William Barr[3] (this partisan complaint was outrageously and incredibly filed by all four (4) prior presidents of the District of Columbia bar as well as a former Senior Bar Counsel) for withdrawing the

_____

[2] https://www.washingtonpost.com/politics/law-professors-file-misconduct-complaint-against-kellyanne-conway/2017/02/23/442b02c8-f9e3-11e6-bf01-d47f8cf9b643_story.html
[3] https://thehill.com/regulation/court-battles/508489-more-than-two-dozen-dc-bar-members-urge-disciplinary-probe-of-ag

indictment of General Mike Flynn and for remarks he made on Fox News, Senators Ted Cruz[4] and Josh Hawley[5] over their role in advocating for President Trump in the last election, and former U.S. Attorney Rudy Giuliani, who was temporarily suspended without even a hearing,[6] over his representation of President Trump, to name just a few. To the contrary, when an ethics complaint was filed against Defendants' counsel, Mark MacDougall, for making false statements in court pleadings, and fellow leftist Democrat lawyer David Kendall of Williams & Connolly over his admitted involvement in the destruction of Hillary Clinton's 33,000 emails, which complicity is not even in dispute, the complaint was not acted upon, and ODC summarily and quickly rejected the complaint filed by conservative lawyer and public interest advocate Ty Clevenger against Hillary Clinton, who ODC has also attempted to disbar, until they drove him into submission due to the cost of defending himself, and he simply resigned.[7] Comp. ¶ 14. Furthermore, in a recent disciplinary proceeding, on the Hearing Committee was Michael Tigar, a proud and avowed communist, a clear ideological foe to Mr. Klayman. Exhibit 2. This evidenced the "stacked deck" that conservative attorneys like Mr. Klayman are faced with.

Not coincidentally, Defendant Porter and ODC have engaged in similar unethical, if not illegal unconstitutional , tactics with regard to other conservative and Republican members of the District of Columbia Bar who they arrogantly decide for themselves, for whatever improper

---

[4] https://www.texasstandard.org/stories/lawyers-law-students-officially-file-grievances-seeking-to-disbar-senator-ted-cruz/
[5] https://thehill.com/homenews/state-watch/534783-attorneys-urge-missouri-supreme-court-to-probe-hawleys-actions
[6] https://www.law.com/newyorklawjournal/2021/03/03/nyc-bar-details-complaints-calling-for-full-attorney-discipline-investigation-of-giuliani/#:~:text=Under%20the%20New%20York%20state,censured%20or%20receive%20no%20punishment.
[7] Ty Clevenger, State bar prosecutors are flouting the law, protecting Hillary Clinton and her lawyers, LawFlog, available at: https://lawflog.com/?p=1389

reason, should no longer have the privilege of practicing law in the District. Another District of Columbia lawyer, J.P. Szymkowicz, and Republican member of District of Columbia governing bodies filed a complaint for similar unethical and illegal conduct, which was supposed to give rise to an unprecedented internal Board of Professional Responsibility ("Board") review of the unethical and illegal conduct of Defendant Porter and ODC. Comp. ¶. 15, Comp. Ex. 2. However, despite repeated requests by Mr. Szymkowicz, which requests went substantively unanswered by Defendant Kaiser, the new Board chairman, for years, this internal review was predictably never actually undertaken, evidencing that Defendant Kaiser and his Board will go to great lengths to protect his politically partisan, ethically and legally compromised if not corrupted disciplinary apparatus, as well as himself. Comp. ¶. 15, Comp. Ex. 2.

And now, the facts surrounding ODC's refusal to enforce its own rules on Kevin Clinesmith—the former senior Trump hating FBI lawyer who falsified a surveillance document in the Trump-Russia investigation and who pled guilty to felony charges—have been revealed.[8] Exhibit 3. The Court can take judicial notice of this, as matters of public record. Even though it is customary to seek disbarment for lawyers who are convicted of serious crimes, ODC did not even initiate disciplinary proceedings and temporarily suspend him until <u>five months</u> after Clinesmith pled guilty, and only after their inaction was uncovered and subjected to negative publicity. It is clear that ODC and the Board intended to simply sweep this under the rug until their duplicitous practice of selective prosecution was uncovered and revealed further. Then, even more incredibly, Clinesmith was reinstated as a member of the bar in good standing after the Court agreed with ODC's recommendation to let Clinesmith off with time served after just seven (7) months. Records show that ODC did not even check with Clinesmith's probation

---

[8] *In Matter of Kevin E. Clinesmith,* 21-BG-018 (D.C. App.)

officer to see if he had violated terms or completed his community service requirement. ODC and the Board also did not seem to care that Clinesmith did not report his felony guilty plea to the bar within 10 days, as required by the rules, and instead failed to do so for five (5) months. Despite all of this, Clinesmith was allowed to negotiate his practically non-existent sanction with his ODC compatriots and sycophants led by Chairman Kaiser at the Board. The reason for this preferential treatment? Clinesmith's fraud was committed in order to destroy President Trump, and Clinesmith has himself publicly made virulent anti-Trump political messages. Defendants Fox and Kaiser orchestrated this "dive" in order to clearly favor Clinesmith, who they are ideologically akin to.  In stark contrast, an apparently ethical bar association which apparently dealt with facts and not political favors—the Michigan Bar—promptly automatically suspended Clinesmith on the day he pled guilty of a felony and suspended him for two years.

**B.    Defendants' Continued Pattern and Practice of Illegal, Improper, and Unethical Misconduct**

As set forth in the Complaint, the Defendants have engaged in a continuing course of conduct and goal is to continue to pile on meritless investigation and complaint after meritless investigation and complaint in order to financially ruin Mr. Klayman, and to have him expend considerable amounts of time defending himself and therefore silence his conservative/libertarian private and public interest advocacy, the right to which is guaranteed to Mr. Klayman and his clients under Section IV. Comp. ¶ 9. As part of their pattern and practice of and continuing course of conduct and scheme to severely and irreparably harm and damage Mr. Klayman by attempting to remove him from the practice of law, Defendants have chosen to use the tactic engaging in acts which  harassing, unethically and illegally,  financially harm Mr. Klayman, if not bankrupting him, by a never ending series of bar proceedings that lack merit, but which incur huge attorney time, resources and monies to defend. Thus, even when they fail in their attempts

to have Mr. Klayman disbarred, they are attempting to accomplish the same purpose by destroying his legal practice and other professional endeavors and he and his family's well-being financially by having to defend, at huge cost in terms of legal fees, costs and time, their frivolous attempts, at  taxpayer and/or bar member expense but not their own, to have him removed from the practice of law in the District of Columbia, and then publicizing this to the media in Florida and elsewhere throughout the United States to ruin his reputation and harm him, his colleagues and family further. Comp. ¶ 12. Defendants know that by bankrupting and silencing his Section IV private and public interest advocacy in the District of Columbia, they are also seeking to accomplish the same objective in the other jurisdiction where Mr. Klayman primarily practices— Florida – his home state. Comp. ¶ 10. To that end, the Defendants have piled on meritless bar complaint after meritless bar complaint, as set forth in the Complaint.

*First*, currently pending before the District of Columbia Court of Appeals ("DCCA") is *In re Klayman*, 20-BG-583 (the "Sataki Complaint"). The Sataki Complaint is based on Mr. Klayman's representation of Elham Sataki in and around the year 2010. **Evidencing the entirely meritless nature of the Sataki Complaint is the fact that Ms. Sataki filed identical complaints with The Florida Bar as well as the Pennsylvania Bar, and they were summarily dismissed many years ago as being meritless**. Furthermore, Ms. Sataki even abandoned her complaint with ODC, yet ODC literally used a private investigator to track her down in order to get her to continue her complaint against Mr. Klayman. Then, at the hearing in this matter, Ms. Sataki was totally impeached after having given conflicting and false testimony, and she was ODC's only witness. On the other hand, Mr. Klayman presented seven compelling material witnesses in his favor, including a federal judge and woman's rights advocate Gloria Allred, who all testified in Mr. Klayman's favor. So too did renowned legal ethics expert Ronald Rotunda,

who issuing an opinion in a pro bono capacity, found that Mr. Klayman had done no wrong. Yet despite all of this, and as evidence of a corrupted and partisan D.C. bar disciplinary apparatus, the Board, led by Defendant Kaiser, still, without factual or legal basis,  recommended discipline and an 18 month suspension against Mr. Klayman, as well as a draconian reinstatement provision without factual or legal bases to do so. Comp. ¶ 30. Nonetheless, as a result of this politically based, highly flawed and prejudicial Report by Defendant Kaiser and the Board, Mr. Klayman has essentially been automatically given a temporary suspension by the DCCA while the matter is being decided. This complete due process violation is the underlying basis for the case styled and *Klayman v. Blackburne-Rigsby, et al*, (21-cv-409) (D.D.C.) (*"Blackburne* Case"), as set forth in detail in the following section. Comp. ¶ 33.

*Second*, there is the case styled *In re Klayman*, 18-BD-070 (the "Bundy Complaint") that is currently pending at the Board. The Bundy Complaint centered around Mr. Klayman's zealous efforts to obtain *pro hac vice* entry into the criminal prosecution of his client, Cliven Bundy, in the U.S. District Court for the District of Nevada. Mr. Bundy was facing the possibility of life imprisonment for his role in a peaceful standoff with federal Bureau of Land Management and Federal Bureau of Investigation agents in 2014. During the trial, it was clear that the federal prosecutors in charge were willfully and wantonly disregarding and violating the law, not turning over exculpatory  Brady material, and repeatedly lying to the Court[9], which to both Mr. Bundy and Mr. Klayman meant that Mr. Klayman needed to do everything he possibly could to gain *pro hac vice* entry to defend him in literally a life-or-death scenario. Comp. ¶ 35. At the disciplinary hearing on this matter, Erwin Chemerinsky, Dean of U.C. Berkeley School of Law and perhaps the most respected constitutional and legal ethics scholar alive today as Professor Rotunda is

---

[9] This was so bad that the supersedeas indictment  against Mr. Bundy and the other defendants was ultimately dismissed  due to gross prosecutorial misconduct

deceased, and someone who is not of Mr. Klayman's ideological persuasion, testified as an pro bono expert witness on behalf of Mr. Klayman that he did nothing wrong. At the conclusion of the hearing, the chairperson of the Hearing Committee, Buffy Mims, Esq., stated, ""the Hearing Committee went into executive session and determined that it could not make a preliminary finding that Disciplinary Counsel had proven any disciplinary rule violation." Comp. ¶ 36.

*Third,* there is a completely frivolous complaint brought by known con-man and recognized fraudster Dennis Montgomery, which is still pending at ODC over two years later. *In re Klayman*, 2019-D197 (the "Montgomery Complaint"). Mr. Montgomery has a national and international reputation of being a con man, a fraud, an extortionist and as a sick pathological liar, attesting to by even one of his prior legal counsel, Michael Flynn. Attached as <u>Exhibit 3</u> is, as just one of a myriad of examples, a report concerning  Mr. Montgomery infamous reputation as a con-man, his latest con and fraud concerning his association with CEO Mike Lindell of MyPillow over the 2020 presidential election – where he conned Lindell to buy him a multi-million dollar house.  Currently pending as well is a criminal indictment in Las Vegas Nevada against Mr. Montgomery over charges of gambling fraud (i.e., passing bad checks, etc.) and other illegal acts. Comp. ¶ 37, Comp. Ex. 3. Mr. Klayman even submitted to Defendants a detailed response completely refuting every single false allegation brought by Mr. Montgomery, who had for years actually been cyber-harassing Mr. Klayman, his family, and his associates, Comp. ¶ 39, yet completely undeterred by the facts and the truth, and seizing upon this false and fraudulent complaint by Mr. Montgomery, Defendant  Porter prematurely and vindictively and without cause had issued a vexatious and retaliatory subpoena and purportedly served it on Mr. Klayman to clean out all of his files with regard to his prior representation of Montgomery,

without cause, as Defendant Porter failed and refused to do even a cursory due diligence with regard to the veracity of Defendant Montgomery's fraudulent complaint. Comp. ¶ 40.

*Fourth*, there is a complaint brought by Peter Santilli, a convicted felon, and a surrogate of seven count convicted felon Roger Stone – someone who Plaintiff believes may have, with his ties to President Trump, played a role in having this Court appointed to the federal bench having played the same role with other federal judges in this courthouse --  the latter of whom Mr. Klayman has had to sue for his client Dr. Jerome Corsi and himself over defamation, which Santilli complaint is also pending at ODC. Mr. Santilli was paid by Stone to file the bar complaint to harm Dr. Corsi who is represented by Mr. Klayman. This complaint, like the others, is  ludicrous as Mr. Klayman never even represented Mr. Santilli as a client. Incredibly, even this complaint is still pending at ODC, as Defendants are also keeping it in their "back pocket" in case they don't achieve the results they want in Sataki and Bundy. Comp. ¶ 41, Comp. Ex. 4.

*Fifth*, On October 28, 2021, Defendant Porter, arrogantly gloating in Plaintiff's face, sent Mr. Klayman a new letter informing him of "**another investigation**" and asking him to explain how two lawsuits, *Klayman v. Rao et al*, 21-cv-2473 (D.D.C.) ("*Rao* Case") and *Klayman v. Blackburne-Rigsby, et al*, (21-cv-409) (D.D.C.) (*"Blackburne* Case") did not violate Rule 3.1, which requires that "a lawyer not bring a proceeding or assert an issue without a factual and legal basis." Comp. ¶ 43, Comp. Ex. 6. Mr. Klayman was forced to file these two lawsuits in order to protect his due process and other sacrosanct rights. In the *Rao* case, Mr. Klayman brought suit for due process and other violations stemming from a civil case styled *Klayman v. Judicial Watch*, *Inc. at al*, 1:06-cv-670 (D.D.C.). and its appeal at the D.C. Circuit (the "Judicial Watch Case"). As a result of the Judicial Watch Case, Mr. Klayman is facing a highly flawed and large jury verdict  that will surely bankrupt him. This jury verdict was reached as a result of

10

highly prejudicial and manifest errors by both the trial court as well as the appellate court that they refused to even consider, much less correct. Mr. Klayman therefore had no choice but to file this suit to preserve his due process and other rights, where he only sought injunctive and declaratory relief. Comp. ¶ 44, Comp. Ex. 6. In the *Blackburne* case, Mr. Klayman is currently serving a completely unwarranted and unconstitutional "temporary suspension" from the District of Columbia Bar, now going on 17 months, pending the final disposition of the flawed and frivolous Sataki Case. Mr. Klayman has essentially been presumed guilty until proven innocent, a complete violation of his due process, equal protection and other rights, as set forth above. Comp. ¶ 45. Even just a cursory review of both of these Complaints would have revealed that neither case sought any monetary damages against the Defendants, and instead, only sought injunctive and/or declaratory relief. This type of Complaint is clearly proper as a matter of established and black letter case law and other legal precedent. *See Pulliam v. Allen*, 466 U.S. 522 (1984), the United States Supreme Court expressly held that "[w]e conclude that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Id.* at 541-42; *Wagshal v. Foster*, 307 U.S. App. D.C. 382, (1994).

Thus, it is clear that this new investigation by the Defendants is completely meritless and without any basis in the law. However, based on Defendants' pattern and practice and continuing unethical, illegal and unconstitutional conduct, it is a sure bet that they will knowingly pursue this meritless issue to the very end, as they know that doing so will further drain Mr. Klayman's time, energy, and financial resources to zero (0), thereby bankrupting him and in effect, removing him from the practice of law by significantly curtailing and ultimately silencing his conservative/libertarian private and public interest advocacy, not just in the District of Columbia but also in Florida and this circuit, as set forth herein.

## II.      THE LAW

### A.  The Rule Against Claim Splitting Does Not Apply

"To determine whether a party has improperly split its claims among lawsuits, a court must determine (1) whether the case involves the same parties and their privies, and (2) whether the separate cases arise from the same transaction or series of transactions. *Id. Joseph v. Pacesetter Personnell Serv.*, 2022 U.S. Dist. LEXIS 108102, at *13 (S.D. Fla. June 16, 2022).  Here, it is clear that this action is not duplicative of *Klayman v. Porter et al*, 9:22-cv-80270 (S.D. Fla. Feb. 23, 2022) (the "Damages Action")  because (1) this instant action seeks <u>only</u> injunctive relief, whereas the Damages Action sought damages under 42 U.S.C. § 1983 and (2) this instant action is not based on the same set of facts because it also includes the Defendants' October 28, 2021 letter , Defendant Porter, arrogantly gloating in Plaintiff's face, sent Mr. Klayman a new letter informing him of "**another investigation**" and asking him to explain how two lawsuits, *Klayman v. Rao et al*, 21-cv-2473 (D.D.C.) ("*Rao* Case") and *Klayman v. Blackburne-Rigsby, et al*, (21-cv-409) (D.D.C.) (*"Blackburne* Case") did not violate Rule 3.1, which requires that "a lawyer not bring a proceeding or assert an issue without a factual and legal basis." Comp. ¶ 43, Comp. Ex. 6. This was not at issue in the Damages Action, as this was a new example of Defendants' continued pattern and practice of unethical, illegal and unconstitutional conduct aimed at removing him from the practice of law by curtailing and ultimately silencing his conservative/libertarian private and public interest advocacy.

### B.  *Forum Non Conveniens* Does Not Apply

Defendants are correct that this Court is not the right forum for this case, but they are completely off base about what the correct forum is. As set forth in Mr. Klayman's Motion to Remand, the correct forum and venue for this case lies in the Fifteenth Judicial Circuit in and for

Palm Beach County, Florida ("State Court"). This is because (1) there is no federal question at issue because only the Florida Constitution is invoked and (2) there is no diversity jurisdiction because this instant action is for injunctive relief <u>only</u>, and therefore there is no way that damages are in excess of $75,000. *Ericsson GE Mobile Communs. v. Motorola Communs. & Elecs.*, 120 F.3d 216 (11th Cir. 1997).

In any event, it is more than abundantly clear that the District of Columbia is not the proper forum, contrary to the Defendants' disingenuous bad faith allegations. This is a case brought under the Florida Constitution, by a Florida resident and attorney, meant to redress harm suffered in Florida, the jurisdiction where Mr. Klayman primarily practices:

> In this regard, as Defendants know that Mr. Klayman   continues to be licensed to practice in Florida, and that he does in fact primarily practice in Florida, their continued harassment and unethical and illegal actions of and concerning Mr. Klayman are meant to effectively destroy even his ability to practice law in Florida and in this circuit, including engaging in private and public interest advocacy here. Defendants' conduct therefore severely financially harms Mr. Klayman in Florida by diverting huge time and resources that can be used to representing clients and seeking new clients, and silences his Section IV public and private advocacy here as well. Comp. ¶ 18.

There is nothing conclusory about this. The Complaint gives examples of Mr. Klayman's many clients in Florida, as well as cases that he brought *pro se* in Florida. Comp. ¶ 20-21. The Complaint details how the Defendants have targeted Florida in the past to harm Mr. Klayman, when they attempted to subject Mr. Klayman to attorney discipline by sending out secret unauthorized *ex parte* communications to The Florida Bar, in a malicious and vindictive  attempt to unethically and illegally harass and have Mr. Klayman suspended and disbarred in Florida as well. Comp. ¶ 23. Thus, it is not even remotely debatable that Florida is the proper forum.

It bears repeating that the Defendants are the ones who are desperate to have this case transferred to the District of Columbia or decided based on the Damages Action in the District of

Columbia. This is because they have been allowed to "get away with murder" by the District of Columbia courts, due to their favored states and preferential treatment as members of the District of Columbia attorney disciplinary apparatus. They know that there is no way that District of Columbia courts would likely even consider ruling against them – so incestuous is the swamp -- and that is why they are so desperate to transfer a case brought under the Florida Constitution, by a Florida resident and attorney, to redress harm in Florida, where Mr. Klayman primarily practices, to the District of Columbia. The Court must therefore ask itself—who is the one who is forum and judge "shopping?" It's not Mr. Klayman. In this same vein, the Defendants' request to stay this case pending the outcome of the Damages Action must be denied, as the District of Columbia is the wrong venue and has no jurisdiction over Mr. Klayman's claims.

### C. *Res Judicata* **Does Not Apply**

The Defendants make a broad assertion that *res judicata* precludes this action, but completely ignore the fact that this instant action is based on an entirely different set of facts, and on Defendants' continued misconduct which has occurred <u>after</u> the prior cases were filed.

*Klayman v. Fox*, 18—cv-1579 (D.D.C.) and *Klayman v. Lim* 18-cv-2209 (D.D.C.) were filed by Mr. Klayman in response to actions taken by ODC and the president of the District of Columbia Bar regarding their misconduct in prosecuting a specific meritless disciplinary complaint against him. The misconduct occurred in 2018, when these cases were filed. *Klayman v. Porter*, C.A. No. 3:20-cv-02526-M (N.D. Tex.), *Klayman v. Porter*, C.A. No. 1:20-cv-1014 (W.D. Tex.) and *Klayman v. Kaiser*, No. 20-cv-09490 (N.D. Cal. Dec. 31, 2020) were also filed to redress specific misconduct—tortiously interfering with other jurisdictions where Mr. Klayman was licensed to practice by illegally, improperly, and without any jurisdiction, sending out secret *ex parte* letters to try to have Mr. Klayman disciplined.

Tellingly, none of these cases sought injunctive relief preventing the Defendants from continuing to violate Mr. Klayman's rights under the Florida Constitution, which is the sole matter at issue here. These prior cases therefore offer no preclusive effect. Indeed, Mr. Klayman was forced to file these prior cases because the Defendants simply will not leave him alone. They simply insist on engaging in pattern and practice of continuing unethical, illegal and unconstitutional conduct aimed at removing Mr. Klayman from the practice of law by significantly curtailing and ultimately silencing his conservative/libertarian private and public interest advocacy. Mr. Klayman therefore has had no choice but to file these cases to defend himself, his reputation, and his ability to earn a living.

### D. Defendants Do Not Enjoy Absolute Immunity in Florida

The primary reason that Defendants are so desperate to have this matter transferred to the District of Columbia is the fact that they have given themselves self-conferred "absolute immunity" pursuant to District of Columbia Bar Rule XI § 19(a) to shield themselves from liability for the egregious misconduct. The Preamble of the Bar Rules sets forth that (1) the District of Columbia Bar is created by the District of Columbia Court of Appeals as an "official arm of the Court" and (2) the District of Columbia Court of Appeals promulgated the Bar Rules itself. Thus, the District of Columbia Court of Appeals has granted itself "absolute immunity."

This flies in the face of well-established precedent that it is not a court's duty much less right to create law, but only to interpret it. "To begin with, it is inappropriate to give weight to Congress' unenacted opinion when construing judge-made doctrines, because doing so allows the Court to create law and then effectively codif[y] it based only on Congress' failure to address it. **Our Constitution, however, demands that laws be passed by Congress and signed by the President**. Art. I, §7." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 299 (2014)

(emphasis added) (internal citation and quotations omitted). *See also Wilder-Mann v. United States*, 1993 U.S. Dist. LEXIS 9166, at *3 (June 27, 1993) ("The Court doubts that it has the power to create law for the District of Columbia and thereby create jurisdiction for itself under the FTCA."). Thus, This "absolute immunity" was not legislated by Congress or District of Columbia legislators. This is not the function of a court and is wholly improper and in fact unconstitutional/ In any event, this case is in Florida, not the District of Columbia. Thus, District of Columbia law—the D.C. Bar Rules—are not applicable here. Florida law applies. The Defendants make no argument that D.C. law applies, nor could they, so this point is conceded.

However, alternatively, even if the District of Columbia Court of Appeals' self-granted "absolute immunity" were proper – again, it is not, as set forth above – it does not apply to the allegations set forth in the Complaint. The Court in *Richardson v. District of Columbia*, 711 F. Supp. 2d 115 (D.D.C. 2010), expressly found this grant of immunity only applies to conduct taken "in the course of [Bar officials'] official duties." There is no feasible argument that intentionally violating constitutional rights is in the course of the Defendants' official duties.

Lastly, it is clear that even judicial immunity, much like prosecutorial immunity, does not apply to claims for injunctive relief. Numerous courts have made this finding, including the Lower Court. "…[J]udicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity," *Moten v. Hatch*, 2011 U.S. Dist. LEXIS 97661, at *3 (D.D.C. Aug. 25, 2011).  *See also Livingston v. Guice*, 1995 U.S. App. LEXIS 29238 (4th Cir. Oct. 18, 1995) ("Equally clear, however, is the principle that judges are not absolutely immune from suits for prospective injunctive relief. *Pulliam v. Allen*, 466 U.S. 522, 536-543, 80 L. Ed. 2d 565, 104 S. Ct. 1970 (1984). "Absolute" immunity, therefore, is only absolute insofar as it limits claims for *damages* brought against judges.") *Id*. at 10.

In the landmark case of *Pulliam v. Allen*, 466 U.S. 522 (1984), the United States Supreme Court expressly held that "[w]e conclude that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Id*. at 541-42.   In *Pulliam*, the Petition, Gladys Pulliam was a magistrate judge. She had a practice of imposing bail on persons arrested for non-jailable offenses and then incarcerating those persons if they could not meet bail. *Id*. at 524. Respondents challenged this practice under 42 U.S.C. § 1983. The District Court  found that this was a violation of due process and equal protection and enjoined Pulliam. *Id*. at 526. The Supreme Court affirmed. In doing so, it provided sound landmark legal reasoning that resonates and applies to this day:

> If the Court were to employ principles of judicial immunity to enhance further the limitations already imposed by principles of comity and federalism on the availability of injunctive relief against a state judge, it would foreclose relief in situations where,  in the opinion of a federal judge, that relief is constitutionally required and necessary to prevent irreparable harm. Absent some basis for determining that such a result is compelled, either by the principles of judicial immunity, derived from the common law and not explicitly abrogated by Congress, or by Congress' own intent to limit  the relief available under § 1983, we are unwilling to impose those limits ourselves on the remedy Congress provided. *Id*. at 539-40.
> We remain steadfast in our conclusion, nevertheless, that Congress intended § 1983 to be an independent protection for federal rights and find nothing to suggest that Congress intended to expand the common-law doctrine of judicial immunity to insulate state judges completely from federal collateral review. *Id*. at 541.

*See also*. *Absolute Judicial Immunity Makes Absolute No Sense: An Argument for an Exception to Judicial Immunity*, 84 Temp. L. Rev. 1071.; *see also Note: Pulliam v. Allen: Harmonizing Judicial Accountability for Civil Rights Abuses with Judicial Immunity* 34 Am. U. L. Rev. 523. Thus, even if D.C. law were to apply, and the Court were to strangely find that intentionally violating Mr. Klayman's constitutional rights were part of Defendants official duties, that Mr. Klayman is only seeking injunctive relief would still defeat any claim of judicial immunity

### E.  *Younger* Abstention Does Not Apply

Defendants argue that the Court should deny Mr. Klayman injunctive relieve under the *Younger* abstention doctrine. However, the Supreme Court in *Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69 (2013) limited the application of the *Younger* abstention doctrine to only three situations: (1) intrusion into ongoing state criminal prosecutions, (2) certain "civil enforcement proceedings" and (3) pending "civil proceedings involving certain orders…uniquely in furtherance of the state court's ability to perform their judicial functions." *Id*. Given the very limited nature of this doctrine, particularly as applied to the facts of this case, it is clear that Courts should not strain to find that it is applicable.

Furthermore, it is indisputable that there exists a "bad-faith" exception to the *Younger* doctrine, which this Court has defined as "where 'the pending state action was brought in bad faith or for the purpose of harassing' the federal plaintiff…." *JMM Corp. v. District of Columbia*, 363 U.S. App. D.C. 160, 170 (2004). Furthermore, other courts have found:

> A showing that a prosecution was brought in retaliation for or to discourage the exercise of constitutional rights "will justify an injunction regardless of whether valid convictions conceivably could be obtained." *Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir.1981). The state does not have any legitimate interest in pursuing such a prosecution; "[p]erhaps the most important comity rationale of Younger deference—that of respect for the State's legitimate pursuit of its substantive interests—is therefore inapplicable." *Wilson v. Thompson*, 593 F.2d 1375, 1383 (5th Cir.1979).

*Lewellen v. Raff*, 843 F.2d 1103, 1109–10 (8th Cir. 1988). "When, however, a state bar acts in bad faith or to retaliate against First Amendment protected activity, the courts should not abstain." *Hensler v. District Four Grievance Committee*, 790 F.2d 390, 391 (5th Cir.1986). "Abstention would serve no purpose because a state cannot have a legitimate interest in discouraging the exercise of constitutional rights, or, equally, in continuing actions otherwise brought in bad faith, thereby reducing the need for deference to state proceedings." *Cullen v. Fliegner*, 18 F.3d 96, 104 (2d Cir. 1994).  Here, Defendants are intentionally piling on meritless

complaint after meritless complaint in hopes of diverting all of Mr. Klayman's time and financial resources, thereby bankrupting him, and preventing him from representing clients and obtaining new ones.  By doing so, Defendants hope to, and have, significantly curtailed and seek to totally silence his First Amendment public interest and private advocacy rights. This clearly implicates the exercise of constitutional rights by Mr. Klayman.

### F.  Mr. Klayman Has Pled Valid Causes of Action

*First*, Mr. Klayman has properly pled a cause of action under Fla. Const. § IV, which states, "[e]very person may speak, write and publish sentiments on all subjects but shall be responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press." Defendants make the completely false and disingenuous allegation that Mr. Klayman "fails to identify a substantial nexus to protected speech." Def's Mtn at 18. The Complaint details the fact that every single instance of gross, egregious misconduct by the Defendants was done in order to "remov[e] him from the practice of law by significantly curtailing and ultimately silencing his conservative/libertarian private and public interest advocacy, not just in the District of Columbia but also in Florida and this circuit." Comp. ¶ 53. *See also* Comp. ¶ 9, 18, 24, 29, 34, 46. Mr. Klayman's right to be a conservative/libertarian private and public interest advocate is guaranteed to him under Fla. Const. § IV. The Complaint sets forth in detail the Defendants' violation of this constitutional provision:

> Defendants know that even if they are unsuccessful in ultimately obtaining formal discipline against Mr. Klayman, they can achieve the same effect simply by piling on meritless investigation and complaint after meritless investigation and complaint, thereby forcing Mr. Klayman to devote enormous time, energy, and financial resources to defend them. Thus, Defendants' goal of removing Mr. Klayman from the practice of law, and therefore silencing his private and public interest advocacy, will be achieved even if there is no formal discipline against Mr. Klayman. Comp. ¶ 26.

Thus, the bottom line is this—the Defendants' goal is not simply to obtain a final disciplinary decision against him, but instead is to wield their power and authority to prevent Mr. Klayman from being advocating conservative/libertarian public interest causes and private actions. This is the textbook definition of trying to "silence" him, violating his rights under Fla. Const. § IV.

*Second*, Mr. Klayman has also properly pled a cause of action under Fla. Const. § IX, which provides "no person shall be deprived of life, liberty, or property without due process of law, or be twice put in jeopardy for the same offense, or be compelled in any criminal matter to be a witness against oneself." Mr. Klayman has been subject to a completely illegal and unconstitutional "temporary suspension" by the Defendants in the Sataki Matter, where he has now already been "temporarily" suspended for going on eighteen (18) months while the matter drags through the D.C. Court of Appeals. This completely violates Mr. Klayman's due process rights, as he has been presumed guilty until proven innocent, which is diametrically opposed to perhaps the number one most fundamental tenet of our legal system.  This tells one a lot about the disciplinary apparatus in the District of Columbia, as partisan swamp by any other name. This modus operandi has no place in this Court or in Florida, whose state bar is professional and not run by leftist partisan vigilantes and their pliant counsel, who consider themselves immune from bar disciplinary proceedings and other legal recourse and thus believe wrongly that they are free to do as they please without consequence.

## III.   CONCLUSION

Based on the foregoing, the Defendants' motion must be denied in its entirety when this matter is either remanded to state court or transferred and put before a non-conflicted federal court and judge, however much it does not belong in front of any federal court due to a lack of subject matter jurisdiction.

Dated:  July 15, 2022                              Respectfully submitted,

                                                   /s/ Larry Klayman
                                                   _____

                                                   Larry Klayman, Esq.
                                                   7050 W. Palmetto Park Road
                                                   Boca Raton, FL  33433
                                                   Tel.:  561-558-5536
                                                   Email:  leklayman@gmail.com

                                                   *Pro Se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically and served through the court's ECF system to all counsel of record or parties on July 15, 2022.

                                                   */s/ Larry Klayman*
                                                   _____